**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ZAKARI MUSAH,

       Plaintiff,

       vs.

HOUSLANGER & ASSOCIATES, PLLC,

       Defendant.

12-CV-3207 (RWS)(HBP)

Hon. Robert W. Sweet
Hon. Henry B. Pitman

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. Civ. P. 12(b)(6)

SCHLANGER & SCHLANGER, LLP
Attorney for Plaintiff
343 Manville Road
Pleasantville, New York  10570
Tel:  (914) 946-1981 ext. 103
Fax:  (914) 946-2930

Of Counsel:
    Elizabeth Shollenberger, Esq.
    Daniel A. Schlanger, Esq.

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................ i

TABLE OF AUTHORITIES ................................................. ii

PRELIMINARY STATEMENT ............................................. 1

COUNTER-STATEMENT OF FACTS .................................. 1

ARGUMENT .................................................................... 3

    I.    The Civil Practice Law and Rules of New York Require a Judgment Assignee to File its Authority to Act Before Taking Any Actions To Enforce a Judgment     4

    II.    Plaintiff was Not Notified of the Assignment     10

    III.    The Complaint Sets Forth Violations of the FDCPA     12

    IV.    The Complaint Sets Forth Violation of Judiciary Law § 487     13

CONCLUSION ................................................................ 18

# TABLE OF AUTHORITIES

**Page**

## Cases

Bennett v. Spear, 520 U.S. 154, 173,(1997) ............................................................. 10

Chase Bank USA, N.A. v. Cardello, 27 Misc.3d 791 (Civ. Ct. Richmond Co. 2010).......................................................................................................... 5, 11

Diaz v. Portfolio Recovery Assocs., LLC, 2012 U.S. Dist. LEXIS 25802 (E.D.N.Y. Feb. 28, 2012) ..................................................................... 14, 15

Eckhaus v. Blauner, 1997 U.S. Dist. LEXIS 9043 (S.D.N.Y.)................................. 8

G.R. Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 118, (1983) ............ 10

Genetics & IVF Inst. v. Kappos, 801 F. Supp. 2d 497, 504 (E.D. Va. 2011) ........ 10

Holland v. Pardee Coal Co., 269 F.3d 424, 431 (4th Cir. 2001) .............................. 9

In re Schubert, 1992 WL 112351 (S.D.N.Y.) .......................................................... 7

Kohl v. Fusco, 164 Misc. 2d 431 (Civ. Ct. Bronx Co, 1994)................................ 6, 7

Law Research Serv. Inc. v. Martin Lutz Appellate Printers, 498 F.2d 836 (2d Cir. 1974) ................................................................................................... 7, 8

Merck & Co., Inc. v. Hi-Tech Pharmacal Co., Inc., 482 F.3d 1317, 1322 (Fed. Cir. 2007) ..................................................................................................... 9

Miller v. Upton, 687 F. Supp. 2d 86, 97 (E.D.N.Y. 2009) ..................................... 12

Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292 (2d Cir. 2003).................... 12

National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109, (2002)................... 9

Nielsen v. Dickerson, 307 F.3d 623 (7th Cir. 2002)................................................ 12

Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir. N.Y. 1989)......................................................................................................... 10

Smith v. United States, 508 U.S. 223, 228, 1 (1993)................................................ 9

South Shore Adj Co. v Pierre, 32 Misc. 3d 1227A (N.Y. Co. Civ. Ct. 2011 ......... 12

Sykes v. Mel Harris & Assocs., LLC, 757 F. Supp. 2d 413, 419 (S.D.N.Y. 2010)....................................................................................................... 16

Tri City Roofers, Inc. v. Northeastern Industrial Park, 61 N.Y.2d 779 (1984).. 5, 11

## Statutes

15 U.S.C. § 1692e ............................................................................ 12
15 U.S.C. § 1692e(10) ...................................................................... 12
15 U.S.C. § 1692e(2)(A) ................................................................... 12
15 U.S.C. § 1692e(3) ........................................................................ 12
15 U.S.C. § 1692e(5) ........................................................................ 12
15 U.S.C. § 1692f(1) ......................................................................... 13
15 U.S.C. § 1692f(6) ......................................................................... 13
15 U.S.C. § 1692f ............................................................................. 12
Fair Debt Collection Procedures Act ........................................... passim
New York Judiciary Law § 487 .................................................... passim

## Other Authorities

10 Weinstein-Korn-Miller 2d, NY Civ. Prac. ¶ 5019.16 ......................... 5
73 NY Jurisprudence 2d, Judgments § 192 ........................................... 5
American Heritage Dictionary of the English Language 1657 (3d ed. 1992).......... 9
Black's Law Dictionary 1407 (8th ed. 2004)........................................... 9
May 2010 Report by the Consumer Affairs and Civil Court Committees of the
   New York City Bar Association ..................................................... 15

## PRELIMINARY STATEMENT

Plaintiff Zakari Musah ("Mr. Musah" or "Plaintiff") submits this memorandum of law in opposition to the Defendant's motion to dismiss. Defendant Houslanger & Associates, PLLC ("the Houslanger firm" or "Defendant") restrained Mr. Musah's bank account without legal authority to do so. As a result of the Houslanger firm's failure to obtain legal authorization to collect on another litigant's judgment, the Houslanger firm violated various provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1601 et seq. and also violated New York Judiciary Law § 487. Mr. Musah is entitled to actual and statutory damages pursuant to §1692k, and treble damages under § 487. The Complaint lays out in detail the actual damages Mr. Musah suffered as a result of the bank restraint: he was forced to cancel his flight home to Africa at a dollar cost to him of some $1,500 and a serious emotional cost as well, inasmuch as he had been planning a visit to his seriously ill mother.

## COUNTER-STATEMENT OF FACTS

In May of 2011, Mr. Musah discovered that there was a restraint on his bank account at JP Morgan Chase. Complaint at ¶ 10. Upon investigation, Mr. Musah learned that the restraining notice bore a Bronx Civil Court caption, <u>FCC National Bank v. Musah</u>, under Index No. 5162/97. Complaint at ¶ 11. A default judgment

had been entered against him in that action.  Complaint at ¶¶ 22-23. He went to
court to seek relief. Complaint at ¶ 22.

The Houslanger firm had restrained Mr. Musah's account on behalf of its
client Palisades Collections, LLC ("Palisades"), Complaint at ¶¶ 11-12, i.e., not the
plaintiff and original judgment creditor in the litigation, FCC National Bank.[1]  The
restraining notice was signed by attorney Todd E. Houslanger. Complaint at ¶ 11.

Prior to restraining Mr. Musah's bank account, neither Palisades nor the
Houslanger firm had filed the assignment of the judgment[2], as is required under

---

[1] Although it is not a necessary element of a successful claim under the FDCPA, it should be noted that Mr. Musah does not recognize or admit owing any debt to the original judgment creditor, FCC National Bank. Complaint ¶ 22.

[2] Because the Bronx Civil Court has been unable to find the actual file for FCC National Bank v. Musah, Index No. 5162/97, Plaintiff alleged the Defendant's failure to file upon information and belief. Plaintiff has a solid basis for his belief. First, Defendant indicated, prior to the commencement of this Federal court litigation, that it did not have any record relating to the assignment of the judgment. Indeed, Houslanger firm attorney Todd Houslanger, in discussions with Plaintiff's attorneys, has vehemently defended his firm's practice of ignoring CPLR 5019( c ), as Defendant continues to do in this action

Although Defendant feigns shock that the allegation was made on information and belief, the circumstances surrounding this issue were set forth in detail in the Complaint at ¶¶ 14-18, in which Plaintiff alleges:

14. There is no record in the office of the County Clerk for the County of the Bronx of any filing by Palisades Collections, LLC with respect to the judgment in FCC National Bank v. Zakari A. Musah, Index No. 5162/97.

15. Plaintiff's counsel made several attempts to locate the court file for Index No. 5162/97 with the Clerk of the Court for New York City Civil Court, Bronx County, but was repeatedly told that no records were returned from archives for this matter and that the Bronx Civil Court Clerk's office was not in possession of the file.

16. By letter dated February 1, 2012, Plaintiff's counsel was informed by the office of the Chief Clerk of the New York City Civil Court that the Department of Records and Investigation Services, the agency responsible for the storage and retrieval of archived court records, was unable to locate the file in its facility.

17. Plaintiff's counsel also contacted Defendant Houslanger prior to bringing this action and inquired as to whether Houslanger had a copy of the Court file, including the Assignment of Judgment. Defendant Houslanger indicated that he did not have a copy of any such documents.

2

CPLR § 5019(c) of New York's Civil Practice Law and Rules.  Such a filing is required to obtain the court's authority to enforce the judgment, rendering the Houslanger firm's issuance of the restraining notice utterly lawless.

Additionally, even had Defendant properly filed the assignment of judgment as required under § 5019(c), Defendant was not authorized to proceed against Mr. Musah with post-judgment collection action until it had separately notified him that it was now the judgment creditor and had filed the assignment as required.

Mr. Musah, unable to access his funds, was forced to cancel his trip to visit his severely ill mother in Africa, and, as a result, he suffered both monetary and non-monetary damages.  Complaint at 19-22, 40.[3]

## ARGUMENT

At the heart of this dispute between Plaintiff and Defendant is whether New York's laws require a person or entity which acquires a judgment to take any affirmative action prior to attempting to enforce that judgment.  Plaintiff's allegations regarding the violation of the Fair Debt Collection Procedures Act and the violation of the Judiciary Law flow from Defendant's having taken actions

---

18. Upon information and belief, an assignment of judgment was never filed with either the Court or with the County Clerk, as is required by CPLR 5019(c).

Moreover, Defendant does not allege that Mr. Houslanger's office or Palisades ever filed the assignment.

[3] Specifically, Mr. Musah alleges the following actual damages, in addition to statutory damages under the FDCPA and treble damages under NYJL 487: economic loss associated with the cancellation of his trip to Ghana; banking fees, legal fees, stress, anxiety and loss of sleep, as well as mental anguish at being unable to be with his mother in Ghana during her serious illness.  Complaint at 19-22, 40.

which it was not authorized to take.  Namely, as set forth below, pursuant to CPLR

§ 5019(c), the law mandates that a person or entity which steps into the shoes of a

judgment creditor must file the documents evincing that authority in order to use

the law to collect on that judgment.

## I.     The Civil Practice Law and Rules of New York Require a Judgment Assignee to File its Authority to Act Before Taking Any Actions To Enforce a Judgment

Because judgments may be assigned under New York law[4], the legislature

has provided an avenue for assignees to step lawfully into the place of the

judgment creditor and enforce the judgment.  The law has mandated that an

assignee of a judgment must make a filing of its authority before using the courts

to enforce such a judgment.  This requirement is laid out in CPLR § 5019(c),

which is captioned "<u>Validity and correction of judgment or order; amendment of</u>

<u>docket</u>."

Subdivision c states as follows:

> <u>Change in judgment creditor</u>.  A person other than the party recovering a judgment who becomes entitled to enforce it, shall file in the office of the clerk of the court in which the judgment was entered or, in the case of a judgment of a court other than the supreme, county or a family court which has been docketed by the clerk of the county in which it was entered, in the office of such county clerk, a copy of the instrument on which his authority is based, acknowledged in the form required to entitle a deed to be recorded, or, if his authority is based on a court order, a certified copy of the order. Upon such filing the clerk shall make an appropriate entry on his docket of the judgment.

---

[4] General Obligations Law, Section 13-103.

CPLR § 5019(c).

The Court of Appeals, in <u>Tri City Roofers, Inc. v. Northeastern Industrial Park</u>, 61 N.Y.2d 779 (1984), held that "[t]he intent of the provision is . . . to establish the assignee's authority to enforce the judgment." This obviously means that after the filing has been made, the assignee has authority to collect on the judgment, and concomitantly, before such a filing has been made, the assignee has no such authority.

The commentators agree that the legislature has made a CPLR § 5019(c) filing a condition precedent to the assignee's enforcement of the judgment. 10 <u>Weinstein-Korn-Miller 2d</u>, NY Civ. Prac. ¶ 5019.16; 73 NY Jurisprudence 2d, Judgments § 192.[5] Case law, too, emphasizes that filing a proof of assignment in proper form pursuant to CPLR § 5019(c) is mandatory before the assignee takes steps to enforce the judgment.

In <u>Chase Bank USA, N.A. v. Cardello</u>, 27 Misc.3d 791 (Civ. Ct. Richmond Co. 2010), the court rejected a CPLR § 5019(c) filing based on various procedural deficiencies but re-stated the core purpose of the provision, saying, "the court must

---

[5] This commentator could not be clearer: "<u>Requirement of filing proof of authority</u>. Where a person other than the party recovering a judgment becomes entitled to enforce it, he or she must file in the appropriate clerk's office either a copy of the instrument on which his or her authority is based—duly acknowledged—or, if his or her authority is based on a court order, a certified copy of the order." 73 NY Jurisprudence 2d, Judgments § 192.

Defendant's citation to Siegel, New York Civil Practice, (Defendant's brief at page 3) does not provide a citation that affords sufficient detail to allow counsel for Plaintiff to *find* the material quoted by Defendant. Siegel, New York Practice (5th Edition), § 423, which addresses the workings of CPLR § 5019(c), says no such thing.

conclude that [assignee] DebtOne is attempting to establish its right to enforce the judgment and would be seeking to step into Chase's shoes and utilize the court and the legal system to do so." Id. at 792.

Similarly, in Kohl v. Fusco, 164 Misc. 2d 431 (Civ. Ct. Bronx Co, 1994), the creditor-landlord, Mr. Kohl, had obtained both a money judgment and a possessory judgment against his debtor-tenant, Ms. Fusco. Such judgments allow an eviction of the tenant, if she fails to pay the money judgment within five days. As is very common in landlord-tenant matters, the tenant had made an arrangement regarding the payment of the outstanding rent, which the landlord had accepted, but neither had informed the court of their informal détente, so that a money judgment and a judgment of possession remained alive in the courthouse records, if not in the minds of Mr. Kohl and Ms. Fusco. There was subsequently a judicial sale of the property, giving a new owner, Kramlaup Realty Corp. ("Kramlaup") ownership of the building. Kramlaup, without notice to Ms. Fusco and without filing any documentation with the court pursuant to CPLR § 5019(c), promptly evicted Ms. Fusco, relying on the six-month-old judgment. In the ensuing litigation, Kramlaup argued that it should be allowed to make a retroactive CPLR § 5019(c) filing, to paint over his illegal actions.

The court rejected this, saying:

The court finds no merit to Kramlaup's application seeking an order to file the Referee's deed and assignment of interest for the subject premises *nunc*

6

*pro tunc* as of August 2, 1994 pursuant to CPLR 5019(c) . . . In the instant matter Kramlaup Realty Corp. made no attempt to file the aforesaid documents with the clerk of the court prior to the execution of the warrant. Kramlaup Realty Corp. seeks to do so now for the first time, after the fact, merely in response to respondent's motion.

*   *   *

[T]he court will not, at this juncture, give retroactive judicial sanction to absolve Kramlaup from that which it failed to do at the appropriate time. [Citation omitted]  Therefore, even though Kramlaup Realty Corp. acquired all the rights and remedies pertinent to the subject premises upon foreclosure, it remained in legal limbo with regard to this . . . litigation. . . . Kramlaup Realty Corp. had no authority to order the Marshal to proceed with the eviction.

Id. at 438.  The facts in Kohl v. Fusco, supra, closely parallel the facts here. Assuming that Palisades can produce an assignment to it of the judgment obtained by FCC National Bank, then Palisades, like Kramlaup, was one crucial step away from being able to lawfully enforce the judgment.  Neither Palisades nor Kramlaup took that crucial step.  In the same way that Kramlaup acted outside the law in evicting Ms. Fusco, Palisades, acting through its attorneys, the Houslanger firm, acted outside the law in restraining Mr. Musah's bank account.

The cases cited by Defendant deal with perfection of an assignment for purposes other than collection against the judgment debtor.  Both In re Schubert, 1992 WL 112351 (S.D.N.Y.) and Law Research Serv. Inc. v. Martin Lutz Appellate Printers, 498 F.2d 836 (2d Cir. 1974), relied upon by Defendant, involve issues surrounding perfection of an assignment for determining priority

vis-à-vis other creditors in a bankruptcy proceeding.[6] Even though these cases were not challenges to the creditor by the judgment debtor but disputes among creditors, the Second Circuit wrote that "Filing under § 5019(c) also serves to assist the assignee in directly enforcing the judgment against the judgment debtor. *With his right to the judgment a matter of court record, the assignee himself can invoke the court's process against the judgment debtor.* Law Research Serv. Inc., at 840. (Emphasis added).

As discussed above, the case law and commentaries are crystal clear in mandating that a judgment assignee file prior to taking action to enforce the judgment. One need not reach these, however, because the statute itself is unambiguous on its face. CLPR § 5019(c) itself uses mandatory language, saying that "A person other than the party recovering a judgment who becomes entitled to enforce it, *shall file* in the office of the clerk of the court in which the judgment was entered or, in the case of a judgment of a court other than the supreme, county or a family court which has been docketed by the clerk of the county in which it was entered, in the office of such county clerk, a copy of the instrument on which his authority is based, acknowledged in the form required to entitle a deed to be

---

[6] In a third case cited by defendant, Eckhaus v. Blauner, 1997 U.S. Dist. LEXIS 9043 (S.D.N.Y.), the Court found that the assignee of a judgment was not in violation of the CPLR when it filed its assignment in state court only after initiating a federal court case based on the assignment, facts very different from those before the Court now.

recorded, or, if his authority is based on a court order, a certified copy of the order." (Emphasis added.)

When a word is not defined by statute, courts normally construe it in accord with its ordinary or natural meaning. Smith v. United States, 508 U.S. 223, 228, 1 (1993). As for the ordinary or natural meaning of "shall", the American Heritage Dictionary defines "shall" as, among other things, "a requirement, or an obligation." American Heritage Dictionary of the English Language 1657 (3d ed. 1992). Black's Law Dictionary defines "shall", among other things, as "[h]as a duty to; more broadly, is required to." Black's Law Dictionary 1407 (8th ed. 2004). Black's Law Dictionary further states that the use of shall "in the mandatory sense" is the only interpretation acceptable "under strict standards of drafting." Id. Use of the word 'shall' in a statute generally denotes the imperative." Merck & Co., Inc. v. Hi-Tech Pharmacal Co., Inc., 482 F.3d 1317, 1322 (Fed. Cir. 2007); see also National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109, (2002) ("'[S]hall' makes the act of filing a[n administrative] charge [for purposes of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e to e-17 ("Title VII")] within the specified time period mandatory."); Holland v. Pardee Coal Co., 269 F.3d 424, 431 (4th Cir. 2001) (noting that "the word 'shall', when used in a statutory context, is generally construed to be mandatory). Thus, as one would expect, in both common and statutory usage,

"shall" generally means a mandatory requirement or obligation.  See also, <u>Genetics</u>

<u>& IVF Inst. v. Kappos</u>, 801 F. Supp. 2d 497, 504 (E.D. Va. 2011) (interpreting

"shall" as mandatory in interpreting a federal statute).[7]

Moreover, in interpreting statutory language, the Courts are charged with

assuming that a legislature that drafted and adopted a statute and an executive that

signed it into law intended that statute to be interpreted in a manner that did not

render it meaningless.[8]

It is the defendant's violation of CLPR § 5019(c) that is the predicate for

plaintiff's allegations under the FDCPA and New York's Judiciary Law.

## II.    Plaintiff was Not Notified of the Assignment

Even had Defendant properly filed the assignment of judgment as required

under § 5019(c), Defendant was not authorized to proceed against Mr. Musah with

post-judgment collection action until Mr. Musah had been notified of the

assignment.

---

[7] With statutory language much less forceful than the word "shall", the Second Circuit has interpreted Section 1692k as providing for a *mandatory* award of attorneys' fees in FDCPA cases: "In the case of a successful action by an individual to enforce the Act, section 1692k(a)(1) authorizes an award of any actual damage sustained by the plaintiff, section 1692k(a)(2)(A) permits "such additional damages as the court may allow, but not exceeding $ 1,000," and section 1692k(a)(3) *requires* payment of 'the costs of the action, together with a reasonable attorney's fee as determined by the court.'" (emphasis added)  Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir. N.Y. 1989).

[8] See Bennett v. Spear, 520 U.S. 154, 173,(1997) ("It is the cardinal principle of statutory construction ... that it is our duty to give effect, if possible, to every clause and word of a statute . . . rather than to emasculate an entire section."); see also G.R. Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 118, (1983) (discussing significance of congressional intent in matters of statutory construction). Furthermore, not only is the mandatory reading of "shall" logical, but it comports with the way reasonable lawmakers would act.  Those who drafted the law were trying to accomplish some goal—presumably, the goal of keeping track of who has the authority to use the very broad powers of the State in collecting judgments.  Under Defendant's interpretation of CPLR § 5019(c), it is hard to imagine why the legislature would have bothered to include it at all.

The heart of the holding in <u>Tri City Roofers</u>, 61 N.Y.2d 779 (1984) is that a proper filing under CPLR § 5019(c) is a necessary but insufficient step in terms of the judgment assignee establishing its right to collect from the judgment debtor. Specifically, in <u>TriStar</u>, the assignee of the judgment creditor argued, unsuccessfully, that the CPLR § 5019(c) filing was intended to put the debtor on notice of the change in creditors.  The Court, in explaining this, wrote "Although the assignment had been recorded with the county clerk in accordance with CPLR 5019 (subd [c]), neither appellant nor its assignee gave respondent actual notice of the assignment. . . .  A debtor, in order to be charged with a duty to pay a debt to an assignee, must first have actual notice of the assignment. . . .  Respondent, having received no notice of the assignment prior to payment [to the assignor], cannot be charged with a duty to pay the debt to appellant's assignee. . . .  A judgment creditor is not called upon to search the county's records every time he is served with an execution or wishes to make a payment on his debt."  Id. at 781-2.

Trial courts have mandated in consumer collection actions not only compliance with 5019(c) but, in addition, that the assignor must provide the debtor with actual notice of the transfer prior to any attempt by the assignee to enforce the judgment.  See, e.g., <u>Chase Bank USA, N.A. v Cardello</u>, 2010 NY Slip Op 20090, 27 Misc. 3d 791, 794 (Richmond Co. Civil Ct. Mar. 4, 2010) ("The failure to establish that notice of the assignment was given to the debtor makes the

assignment ineffective");accord, South Shore Adj Co. v Pierre, 32 Misc. 3d

1227A (N.Y. Co. Civ. Ct. 2011 ("the court is compelled to dismiss the complaint

because plaintiff failed to submit any evidence that either Chase or Turtle Creek

notified defendant of the assignment.")

## III.    The Complaint Sets Forth Violations of the FDCPA

The complaint alleges that the Houslanger firm violated the FDCPA in

several ways:  by using false, deceptive and misleading representations in

connection with the collection of a debt, in violation of 15 U.S.C. § 1692e; by

making a false representation as to the legal status of the debt, in violation of 15

U.S.C. § 1692e(2)(A); by failing to perform a meaningful review of the court file

before taking collection actions, in violation of 15 U.S.C. § 1692e(3)[9]; by taking

action that could not be legally taken, in violation of 15 U.S.C. § 1692e(5); by

using a false representation or deceptive means to collect or attempt to collect a

debt, in violation of 15 U.S.C. § 1692e(10); by engaging in an unfair and

unconscionable practice, in violation of 15 U.S.C. § 1692f; by collecting or

---

[9] In the Complaint, at ¶¶ 35 and 45, Plaintiff alleges that Defendant made no meaningful review of the case before beginning collection action. As the Federal Courts have made clear, it is a violation of Section 1692e(3) of the FDCPA for a law firm to act as a mere rubber stamp for its clients' collection efforts, without performing meaningful review of the facts of the case. Miller v. Upton, 687 F. Supp. 2d 86, 97 (E.D.N.Y. 2009) ("Miller I [Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292 (2d Cir. 2003)] and Nielsen [ Nielsen v. Dickerson, 307 F.3d 623 (7th Cir. 2002)] thus establish that reviewing basic debtor information -- the informational equivalent of "name, rank and serial number" -- without more, is insufficient data on which to form a reasoned professional judgment as to the appropriateness of a collection action. Miller I, 321 F.3d at 305 (review of Miller's full name, social security number, current address, telephone number, account number, amount of the debt, and a notation that Miller was an attorney, did not, without more, establish the required level of review); Nielsen, 307 F.3d at 636 (finding attorney could not have rendered the necessary judgment on client's limited information, which included only debtor's account number, name, address, account balance and amount past due).")

attempting to collect a debt unless such debt is expressly authorized by the agreement creating the debt or permitted by law, in violation of 15 U.S.C. § 1692f(1); and by taking non-judicial action to effect dispossession or disablement of property if there was no present right of possession, in violation of 15 U.S.C. § 1692f(6). By proceeding with its debt collection efforts against Mr. Musah without the legal authority to do so, the Houslanger firm was in violation of these various provisions of law.

## IV. The Complaint Sets Forth Violation of Judiciary Law § 487

The complaint alleges that the Houslanger firm violated the Judiciary Law in that the law firm knowingly and falsely represented that it had authority to collect a judgment obtained by FCC National Bank, when it knew or should have known that no assignment had been made, meaning that no authority existed to restrain Mr. Musah's bank account. In doing so, the Houslanger firm acted with or consented to deceit or collusion against the court and against Mr. Musah.

These allegations were made on behalf of Mr. Musah on information and belief because the Bronx Civil Court had lost the hard copy file of Mr. Musah's case sometime between the initiation of the case in 1997 and Mr. Musah's order to show cause in 2011. It is likely that plaintiff herein will not be able to show that there is no assignment of the judgment in the court's file, because everything in that entire court file is missing. However, as alleged in the complaint at ¶ 17,

13

counsel for Mr. Musah spoke to defendant and learned that defendant had no such documentation; moreover, in the course of his conversation, he learned that it is the Houslanger firm's ongoing business practice to routinely ignore CPLR § 5019(c). It is Defendant's stated position that these filings are not legally required and Defendant's motion papers make clear that, in light of this, he does not file them.

Defendant is a high volume post-judgment collection firm that routinely represents "judgment creditors" who are not the plaintiffs listed in the state court actions in which the judgments have been obtained.  A review of eCourts[10] reveals that Defendant has appeared in more than 34,000 actions since 2005.  Plaintiff has alleged that defendant routinely ignores CPLR § 5019(c), as "part of a larger, recurring policy and practice that is designed and has the effect of increasing [Defendant's] profits by increasing the number of consumer accounts handled and lowering the cost of handling each account."  Complaint at ¶ 47.

Plaintiff has alleged precisely the sort of repeated, intentional, unlawful collection action that the Courts have found actionable the under New York Judiciary Law in the consumer collection context.  See, e.g., Diaz v. Portfolio Recovery Assocs., LLC, 2012 U.S. Dist. LEXIS 25802 (E.D.N.Y. Feb. 28, 2012) ("unlike the allegations in the cases cited by defendant, which relate to isolated instances of misconduct, plaintiff's claim is based on an alleged broad pattern of

---

[10] eCourts is the New York State database of State court cases, found at www.nycourts.gov.

deceptive filings that plaintiff claims were "'robosigned'" without meaningful review and which were time-barred on their face"). The Magistrate's decision denying the defendant's motion to dismiss was adopted and further discussed at Diaz v. Portfolio Recovery Assocs., LLC, 2012 U.S. Dist. LEXIS 72724 (E.D.N.Y. May 23, 2012) ("Section 487 creates a cause of action against an attorney for engaging in 'deceit or collusion . . . with intent to deceive the court or a party.' N.Y. Judiciary Law § 487. . . . The allegations in the amended complaint—that Defendant filed over 13,000 complaints in 2009 alone and that Wolstein signed over one third of those complaints—establish a pattern of deceptive filings, which support a claim under Section 487"); see also, Sykes v. Mel Harris & Assocs., LLC, 757 F. Supp. 2d 413(S.D.N.Y. 2010).

Defendant's policy of failing to make the mandatory CPLR § 5019(c) filings and failing to cause consumers to be notified of same prior to taking collection action serves a systemic injustice to the consumers and to the Courts, both of whom are entitled to know who is enforcing judgments. The business plan of those who buy massive numbers of judgments in cases involving consumer debt (which are, by and large, default judgments[11]) and the attorneys who represent them is to make it as difficult as possible for consumers (who are overwhelmingly

---

[11] A May 2010 Report by the Consumer Affairs and Civil Court Committees of the New York City Bar Association, as cited by Diaz v. Portfolio Recovery Assocs., LLC, 2012 U.S. Dist. LEXIS 25802 (E.D.N.Y. Feb. 28, 2012), notes that there were 241,195 debt collection lawsuits filed in New York in 2009 and 66% of these cases resulted in defaults.

*pro se*[12]) to unravel the legal mysteries surrounding bank restraints and other collection efforts and to make it virtually impossible for such consumers to understand what is happening to them, much less reach the actual merits of these cases.[13]

The intent of the New York State legislature in enacting CPLR § 5019(c) was to assist litigants and the courts in unraveling, rather than obfuscating, the facts.  It was Congress's intent in enacting the FDCPA to punish those debt collectors who obfuscate, and it was the New York State legislature's intent, in enacting Judiciary Law § 487, to impose liability upon lawyers who so obfuscate.

When a judgment debtor/consumer learns of a bank restraint, it is frequently the first notice that the consumer has of a dispute where a judgment was taken on default.  The bank generally provides its customer with the caption of the case under which the restraint was filed.  Absent a filing under CPLR § 5019(c), if the

---

[12] That same 2010 New York City Bar Association report found that 99% of the debtors were not represented by counsel.

[13] The Court in Sykes v. Mel Harris & Assocs., LLC, 757 F. Supp. 2d 413, 419 (S.D.N.Y. 2010) described the debt-buying business as follows:

> "Debt-buying companies typically purchase "portfolios" of defaulted debts for pennies on the dollar and then attempt to collect the full face value of the debts for themselves. . . .  The debts are priced based upon recency:  debt-buyers must pay more for "freshly charged-off" debts than older debts, which often include debts that others have unsuccessfully tried to collect. . . .  An active market exists even for debts that are beyond the statute of limitations.  (Id.).

> "A debt portfolio customarily contains account information for each consumer, including her name, account number, Social Security address and telephone number, charge-off date, date and amount of last payment, and the alleged amount owed. . . .  When debt-buyers acquire these portfolios, however, they generally do not purchase documentation of the indebtedness between the original creditor and consumer, or they may purchase the documentation for only a small fraction of the accounts."

Id., 757 F. Supp. 2d 413, 419 (S.D.N.Y. 2010).

judgment debtor goes to the courthouse to seek relief, he will be instructed to file a *pro se* order to show cause, and the Court will give him the name and address of the attorney for the original judgment creditor for the service of the order to show cause. The consumer will serve his order to show cause upon that law office, which, in turn, will notify its client (the original judgment creditor), who (understandably) will not view this matter as a priority, inasmuch as the original judgment creditor has now sold off the judgment. If the consumer is forceful, he may contact the law firm which represented the original judgment creditor even before the court date, where he will be faced with, at best, indifference.

On the return date of the consumer's order to show cause, it is likely that either (1) nobody on the plaintiff's side will come to court and the Court will adjourn the matter for re-serving the order to show cause, or (2) the attorney for the assignee will attend and seek an adjournment, having learned only quite recently about the case. Meanwhile, the consumer will continue to have no access to his funds. Why did this occur? It occurred because the assignee failed to file the assignment, pursuant to CPLR § 5019(c), and then failed to notify the judgment debtor of same. Why is this in the judgment assignee's interest? It is in his interest because the longer it takes for the issue to be resolved and the more complicated the process is, the more likely it is that the consumer will either give

up entirely (walking away from his restrained bank account) or, in desperation,

enter into an unfavorable settlement of the debt.

## CONCLUSION

For the foregoing reasons, Defendant's motion is entirely without merit and

should be denied in its entirety.

Dated:   Pleasantville, New York
        September 18, 2012

                                          Respectfully submitted

                                          SCHLANGER & SCHLANGER, LLP

                                          By: *Elizabeth Shollenberg*
                                              Elizabeth Shollenberger, Esq.
                                              Daniel A. Schlanger, Esq.
                                                Attorneys for Plaintiff
                                              343 Manville, Road
                                              Pleasantville, New York  10570
                                              Tel:  (914) 946-1981 ext. 103
                                              Fax:  (914) 946-2930

To:   Jonathan B. Bruno, Esq.
      Deborah M. Zawadzki
      Attorneys for Defendant
      Kaufman Borgeest & Ryan LLP
      120 Broadway, 14th Floor
      New York, New York  10271
      (212) 980-9600

18

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Memorandum of Law in Opposition to Defendant's Motion to Dismiss Pursuant to FED R. CIV. P. 12(b)(6) has been served via ECF and by first-class mail, postage prepaid, on September 18, 2012 upon the attorneys for the parties at the addresses listed below:

Jonathan B. Bruno, Esq.
Deborah M. Zawadzki
Kaufman Borgeest & Ryan LLP
120 Broadway, 14th Floor
New York, New York  10271

*Elizabeth Shollenberger*

Elizabeth Shollenberger, Esq.