UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ZAKARI MUSAH,

                     Plaintiff,

    v.

HOUSLANGER & ASSOCIATES, PLLC

                Defendant.

**Hon. Robert W. Sweet**

**Index:  12-CV-3207**

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

---

Dated:  February 21, 2013
       New York, New York

SCHLANGER & SCHLANGER, LLP
Daniel A. Schlanger, Esq.
Elizabeth Shollenberger, Esq.
9 East 40th Street, Suite 1300
New York, New York 10016
Ph:  914-946-1981
Fx:  914-946-2930
daniel.schlanger@schlangerlegal.com
elizabeth.shollenberger@schlangerlegal.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

I.   **PRELIMINARY STATEMENT**     1

II.  **STATEMENT OF FACTS**     1

III. **ARGUMENT**     2

    A. **Re-Allegation Of Those Claims Dismissed Without Prejudice Or Found By The Court Not To Have Been Raised In The Original Complaint Was Entirely Proper**     2

    B. **Plaintiff Has Stated A Claim For Lack Of Meaningful Review**     3

    C. **Consideration Of Any "Evidence" That Notice Was Sent Or That The Debt Was Assigned Is Impermissible As All Such "Evidence" Is Outside The Four Corners Of The Complaint**     10

      1. The Limited Exceptions To The "Four Corners Of The Complaint" Rule     10

      2. The Collection Letter     10

      3. The "Assignment"     11

    D. **The Documents Submitted Do Not Show A Valid Assignment**     12

    E. **Actual Notice Of Assignment (*i.e.* Receipt) Is Required Under New York Law**     14

    F. **Notice Must Be Provided By The Judgment Assignor, Not The Judgment Assignee**     15

    G. **The Collection Letter Does Not Notify Plaintiff Of An Assignment Of Judgment**     16

    H. **The Documents Submitted Are Not In Admissible Form**     18

      1. The Documents Have Not Been Authenticated     18

        a. The Assignment Is Not Authenticated     19

        b. *The Collection Letter and Screen Shot Are Not Authenticated*     19

    I. **The Complaint Sets Forth Violations of Judiciary Law § 487**     20

    J. **Houslanger Is Not Entitled To Fees Under 15 U.S.C. §1692k(a)(3)**     23

      1. The Defendant's Allegations Regarding The Existence Of The Assignment     23

      2. The Defendant's Allegations Regarding Notice Of The Assignment     24

      3. The Website Allegation:     24

IV.  **CONCLUSION**     25

## I.    PRELIMINARY STATEMENT

Plaintiff Zakari Musah ("Mr. Musah" or "Plaintiff") submits this memorandum of law, by and through counsel, Schlanger & Schlanger, LLP, in opposition to Defendant Houslanger & Associates, PLLC ("Houslanger" or "Defendant")'s motion to dismiss his amended complaint.  Defendant's motion to dismiss should be denied in its entirety.   The complaint offers detailed factual allegations which more than adequately support viable claims under both the Fair Debt Collection Practices Act and under New York Judiciary Law § 487.  Further, the Defendant's motion to dismiss should be denied because it relies heavily on material outside the four corners of the complaint, which is not properly considered on a motion to dismiss, and, in any case, is grossly deficient.  Defendant's request for attorney's fees and costs is frivolous.

## II.    STATEMENT OF FACTS

Mr. Musah was sued in 1997 by FCC National Bank ("FCC") in Bronx Civil Court.  FCC obtained a default judgment against Mr. Musah in this action. This judgment first came to Mr. Musah's attention in May 2011, Houslanger restrained Mr. Musah's bank account on behalf of its client, Palisades Collections, LLC ("Palisades"), which claimed to be an assignee of the judgment originally obtained by FCC.  Mr. Musah denies ever having "had any interaction with [FCC], and alleges that he "has never owed a debt" to FCC.  Amended Complaint ("Am. Complt.") at ¶ 16.

On April 24, 2012, Mr. Musah brought suit under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* ("FDCPA"), and New York Judiciary Law § 487, setting forth Houslanger's failure to follow the mandates of CPLR 5019(c), which require a person who acquires the right to enforce a judgment obtained by another to "file in the office of the clerk of the court in which the judgment was entered or, in the case of a judgment of a court other than the supreme, county or a family court which has been docketed by the clerk of the county in which it was entered, in the office of such county clerk, a copy of the instrument on which his authority is based, acknowledged in the form required to entitle a deed to be recorded, or, if his authority is based on a court order, a certified copy of the order."  The initial complaint also alleged that Houslanger violated the FDCPA § 1692e(3) by sending out debt collection communications without conducting meaningful review, and Judiciary Law § 487.

Houslanger *moved to dismiss* that complaint, and on November 16, 2012, this Court issued an order dismissing the Complaint without prejudice. Musah v. Houslanger & Assocs., PLLC, 2012 U.S. Dist. LEXIS 164292 (S.D.N.Y. Nov. 16, 2012)("Order").

On December 14, 2012, Plaintiff filed his Amended Complaint,  which realleges the claims that this Court had earlier dismissed without prejudice (*i.e.*, those based on the Defendant's failure to follow CPLR 5019(c); the § 1692e claim regarding failure to meaningfully review the file; and the Defendant's violation of Judiciary Law Section § 487).  The Amended Complaint also alleges, *inter alia*, that (1) there never was a valid assignment of the judgment from FCC National Bank to Palisades (Am. Complt at ¶¶ 13-14, 23, 33, 34, 48); and (2) prior to Houslanger's initiation of collection action against Mr. Musah on behalf of Palisades, Mr. Musah did not receive notice that the judgment against him allegedly had been assigned to Palisades (Id. at ¶¶17; 35; 38; 49).[1]

## III.   ARGUMENT

Defendant moves to dismiss the Amended Complaint and in doing so has submitted a scattershot of new facts and fact-like statements, in an attempt to disprove the allegations of the complaint. The documents submitted by Defendant are outside the realm of what the court may consider in deciding a 12(b)(6) motion and in any event, are wholly inadequate to show that there was a valid assignment of the judgment and that Mr. Musah had received notice of that assignment, or to refute any of Plaintiff's other claims.

### A.   Re-Allegation Of Those Claims Dismissed Without Prejudice Or Found By The Court Not To Have Been Raised In The Original Complaint Was Entirely Proper

Defendant feigns shock that Plaintiff has realleged his claim regarding nonfiling of the assignment judgment pursuant to CPLR 5019(c), as well as his claims regarding meaningful review and Judiciary Law 487. Defendant is correct that this Court previously rejected these claims. Order at 6.  However, realleging the claim is entirely proper where, as here, the court's prior dismissal was without prejudice and was therefore a non-appealable order. Connecticut Nat'l Bank v. Fluor Corp., 808 F.2d 957, 960 (2d Cir. 1987); Blanco v. United States, 775 F.2d 53, 56 (2d Cir. 1985); Elfenbein v. Gulf & Western Indus., Inc., 590 F.2d 445, 448 (2d Cir. 1978).

---

[1] In its Order, the Court held that the initial complaint failed to raise the issue of Mr. Musah's lack of notice of the assignment of the judgment. Order at *10, n.3.

*Courts have noted in this regard that Plaintiff is only excused from repleading where the claims were rejected* with prejudice. P. Stolz Family P'ship L.P. v. Daum, 355 F.3d 92, 96 (2d Cir. 2004)("We will not require a party, in an amended complaint, to replead a dismissed claim in order to preserve the right to appeal the dismissal when the court has not granted leave to amend.")(*emphasis added*); Young v. City of Mt. Ranier, 238 F.3d 567, 572-573 (4th Cir. Md. 2001)(collecting cases).[2]

### B. Plaintiff Has Stated A Claim For Lack Of Meaningful Review

With regard to Plaintiff's claim for lack of meaningful review, § 1692e(3) of the FDCPA prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney."

In its latest motion to dismiss, Defendants seek dismissal of this claim, reiterating this Court's previous holding on this issue, which was as follows:

---

[2] Plaintiff submits that this Court's Order misapprehended the holding of Law Research Serv., Inc. v. Martin Lutz Appellate Printers, Inc., 498 F.2d 836 (2d Cir. 1974), and of Tri City Roofers, Inc. v. Northeastern Industrial Park, 61 N.Y.2d 779, 780 (1984).

Tri City explicitly states that "the intent of [CPLR 5019] is. . . to establish the assignee's authority to enforce the judgment", but went even further, stating that filing without actual notice to the debtor does not trigger the debtor's obligation to pay the judgment assignee because a "judgment debtor is not called upon to search the county's records every time he is served with an execution or desires to make a payment on his debt". Id.

In Law Research, the Second Circuit did not state, much less hold, that filing pursuant to 5019(c) was unnecessary in order to take collection action against a debtor pursuant to Article 52 of the CPLR. Law Research was an appeal of a bankruptcy court decision, and its holding was that an assignee of a judgment need not make a filing under CPLR 5019(c) in order to perfect the assignment for purposes of establishing its position *vis a vis other creditors*. In interpreting Law Research it is critical to note that the bankrupt debtor in that case was also the assignor of the judgment. The creditor attempted to file the assignment of judgment at the time it received it but was rebuffed by the clerk, apparently because the debtor/assignor had assigned the same judgment to another entity as well, and that other entity had already filed. The creditor tried again to file and was successful, but this second filing occurred within the time period that transfers are normally to be considered voidable. The question before the Second Circuit in Law Research was thus whether the failure/inability of the judgment assignee to file the assignment until within four months of bankruptcy would render the assignment a voidable preference under § 60 of the Bankruptcy Act.

It was in this context that the Court stated that filing the assignment was "for the benefit of the assignee, being designed to protect him against payment of the judgment to the wrong party *and not as a means of providing notice to third-party creditors*." Id. at 840 (*emphasis added*). Critically, immediately following the statement regarding 5019(c)'s non-impact vis a vis the rights of third party creditors in bankruptcy proceedings, the Court stated that "[f]iling under § 5019(c) also serves to assist the assignee in directly enforcing the judgment against the judgment debtor. With his right to the judgment a matter of court record, the assignee himself can invoke the court's process against the judgment debtor. See, e.g., N.Y.C.P.L.R. § 5225(a)." Thus, the Court clearly indicated that filing the judgment pursuant to 5019(c) was required to invoke the authority of the Court against the judgment debtor.

Finally, CPLR 5225(a) was merely listed by the Second Circuit as an example ("e.g.") of how the Court's authority is invoked post-judgment, and not an exhaustive list. There is no basis to believe that filing pursuant to 5019(c) is required in order to have a state court order that a judgment debtor pay over money in his or her possession to a judgment creditor, but not required where the funds are obtained by means of a bank levy or wage garnishment. [Note: Plaintiff hereby incorporates by reference the arguments raised in opposition to Defendant's previous motion to dismiss on this (5019(c)) issue for purposes of any appeal.]

> Contrary to Plaintiff's suggestion, 15 U.S.C. § 1692e(3) does not mandate a "meaningful review of the court file," but rather simply prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). Musah acknowledges in his Complaint that Houslanger is, in fact, a law office, see Compl. ¶ 8, and moreover makes no allegations that Houslanger's attorneys are not properly licensed to practice. § 1692e(3) is therefore inapplicable, so this element of Musah's FDCPA claim fails [*4] as a matter of law on this basis, as well as for the reasons set forth below.

Order at p.2, n.1. <u>See</u> Def. MOL at p. 8.

This interpretation of 1692e(3), which does not reference any of the relevant case law, has been flatly rejected by the Second Circuit, which has held:

> The FDCPA creates a general prohibition against the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e contains a non-exhaustive list of practices within the purview of this prohibition, including "the false representation or implication that any individual is an attorney or that any communication is from an attorney." Id. § 1692e(3). *Although there is no dispute that W&A and UC&S are law firms, or that the letters sent by those firms were "from" attorneys in the literal sense of that word, some degree of attorney involvement is required before a letter will be considered "from an attorney" within the meaning of the FDCPA.*

<u>Miller v. Wolpoff & Abramson, L.L.P.</u>, 321 F.3d 292, 300-301 (2d Cir. N.Y. 2003)(J. Sotomayor)(citing <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1321 (2d Cir. 1993)(*emphasis added*)("<u>Miller I</u>").

In <u>Miller I</u>, Judge (now Justice) Sotomayor extensively analyzed the requirements of a claim that an attorney's review of file was so cursory that the communications bearing his or her name are not truly "from" the attorney for purposes of 1692(e). In doing so, Judge Sotomayor held:   "Defendants argue that their affidavits make clear that they satisfied the FDCPA's requirement of meaningful attorney involvement. These affidavits, however, lack sufficient detail to permit the district court or us to determine that their review was sufficient as a matter of law." <u>Id</u>. at 305.

Specifically, the Court held that for purposes of determining whether a meaningful review had taken place prior to sending a communication "from" an attorney, a review of the consumer's "full name, social security number, current address, telephone number, account number, amount of the debt", and a notation that consumer was an attorney, did not establish the required level of review. <u>Id</u>. at 305; <u>Miller v. Upton</u> ("Miller III"), 687 F. Supp. 2d 86, 97 (E.D.N.Y. 2009).

In <u>Miller I</u>, the Court ultimately held that plaintiff was entitled to discovery on whether the attorney review that had occurred was, as defendant claimed, sufficient to determine whether the consumer "was in

4

bankruptcy, *whether the information in the record was inconsistent or incomplete*, . . . [whether the consumer]

was or was not obligated to pay the debt, or . . . was the correct debtor." Miller I at 305 (*emphasis added*).

In so ruling, the Miller I Court found the volume of Defendants' practice relevant noting:

> If plaintiff's account is typical, this suggests that W&A could have mailed over 110,000 letters a
> month. While defendants argue that this fact is not in the record and that plaintiff's emphasis on
> electronic transmission is "factually and legally irrelevant," *if discovery in this case were to
> reveal that W&A and UC&S handled this high volume of accounts, received only the limited
> information described in the attorney affidavits, reviewed the collection files with such speed
> that no independent judgment could be found to have been exercised, and then issued form
> collection letters with the push of a button, a reasonable jury could conclude that W&A and
> UC&S lacked sufficient professional involvement with plaintiff's file that the letters could be
> said to be from an attorney.*

Id. at 305-306 (*emphasis added*)(citations omitted).

Following Miller I, the Miller case proceeded to trial. The Trial Court's decision, Miller v. Upton

("Miller III"), 687 F. Supp. 2d 86, 97 (E.D.N.Y. 2009), specifically applied Miller I's reasoning to legal

pleadings, finding that the law firm's review of the file prior to "both the issuance of [a] debt collection letter

signed by [the attorney] and the commencement of a legal action were inadequate for FDCPA purposes, thus

rendering misleading these communications with [the consumer]." Id. at 96; Id. at 100 (finding FDCPA liability

where "[t]he volume of business at [the collection law firm], coupled with practices followed in the Miller

matter, supports the conclusion that debt collection letters and litigation documents were regularly mass-

produced at UCS by non-lawyers at the push of a button.").

Moreover, the Miller III Court stressed that the validity of a debt did not factor into the question of

whether the collection attorney had conducted a meaningful review before filing a collection action. Id. at 102

("a shot in the dark is no less sanctionable because it happens to hit the mark.")(citing Garr v. US Healthcare,

Inc., 22 F.3d 1274, 1280 (3rd Cir. 1994).

In Diaz v. Malen & Associates, 2012 U.S. Dist. LEXIS 72724,*13 (E.D.N.Y. May 23, 2012), likewise

found that an attorney's failure to meaningfully review a state court pleading, violated § 1692e(3), citing Miller

III; See, Diaz v. Portfolio Recovery Assocs., LLC, 2012 U.S. Dist. LEXIS 25802 (E.D.N.Y. Feb. 28, 2012)("In

Miller III, the court examined the volume of accounts handled by the collection firm in that case and whether

there were procedures in place to allow for meaningful attorney review prior to the issuance of die state case. Id.

90-95. The court held that the firm could be liable under the FDCPA "if the evidence demonstrated that [the

firm] 'reviewed the collection files with such speed that no independent judgment could be found to have been exercised, and then issued form collection letters with the push of a button.").[3]

Plaintiff's Amended Complaint has raised similar claims to those of Miller and Diaz, alleging that a high volume collection firm has submitted false and deceptive collection communications (e.g. an information subpoena and restraining notice) to which an attorney's signature is affixed using document automation, but which are not meaningfully reviewed by that attorney.

The volume of litigation handled by Mr. Hauslanger; the boilerplate nature of the robo-signed bank Information Subpoena and Restraining Notice (which use a facsimile of Mr. Hauslanger's signature)[4]; Hauslanger's prompt dismissal of the state court action the moment that any inquiry was made by Mr. Musah into the validity of his collection actions; Hauslanger's inability to produce any documentation regarding the file when contacted pre-suit by counsel for Mr. Musah; and Hauslanger's inability, even now, to provide a valid chain of assignment on the account or proof of filing of any assignment all add plausibility to Plaintiff's claim that the file was not meaningfully reviewed for completeness or for a determination whether Palisades had a present right to collect on a judgment taken by another entity, per Miller I and progeny prior to Hauslanger taking collection action.  See Am. Complt. at ¶¶ 29-43, 51-57.

The Amended Complaint clearly states a claim for a violation of § 1692e(3) under Miller I and progeny, alleging sufficient factual matter that, if accepted as true, states a plausible claim that Houslanger did not meaningfully review the file prior to seeking to restrain Mr. Musah's bank account.  Diaz, 2012 U.S. Dist. LEXIS 25802 at 39-40 adopted, objections overruled in Diaz, 2012 U.S. Dist. LEXIS 72724 (holding that allegations similar to those alleged in the Amended Complaint stated an FDCPA claim for lack of meaningful review).  To wit, the allegations, if accepted as true, at a minimum, support a "reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 663.

Indeed, it should be noted that Defendant nowhere claims (in Mr. Houslanger's improperly submitted affidavit or elsewhere) that Houslanger reviewed the file, even minimally, prior to taking collection action.  For example, neither his attorney's submission nor his own affidavit claims that Mr. Houslanger reviewed the

---

[3] Counsel for Plaintiff in the case at bar represented plaintiff in the Diaz litigation.
[4] See Clomon v. Jackson, 988 F.2d 1314, 1321 (2d Cir. 1993)("there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by § 1692e")

complaint, the affidavit of service, the judgment, the affidavit of merit, the chain of assignment, record of filing

of assignment, or record of notification of a change in judgment creditors prior to restraining Plaintiff's funds.

Rather, the history of this litigation suggests the contrary.  Namely, that Houslanger had none of this

information or documentation in his possession at the time Plaintiff filed his *pro se* answer, prompting

Houslanger to immediately discontinue with prejudice rather than to subject his client's claims judicial review.

Am. Compl. at ¶¶ 29-31.  Likewise, the facts suggest that Mr. Houslanger had not reviewed and in fact did not

even have these documents when contacted by Schlanger and Schlanger LLP prior to litigation, or else he surely

would have referenced or produced them at that time.  Id. at ¶ 32.

Indeed, according to Defendants' own records (improperly submitted in support of the instant motion to

dismiss), as of May 1, 2009 "no attorney with [his] firm ha[d] personally reviewed the particular circumstances

of [Mr. Musah's] account."  Exhibit A to Housl. Aff., submitted with Def.'s MOL.

Even prior to discovery, information regarding the volume of litigation handled by Houslanger's office

suggests instead that Mr. Houslanger's signature is automatically affixed to thousands upon thousands of bank

restraint notices in cases such as this.

And as discussed below, the obvious facial flaws with the assignment Hauslanger has (improperly)

submitted in support of his motion add further support to Plaintiff's claim of lack of meaningful review.  To wit,

Miller I requires a review "sufficient to determine . . . .*whether the information in the record was inconsistent or*

*incomplete*."  Miller I, at 305 (*emphasis added*).    The "proof" of assignment of judgment now submitted by

Defendant is grossly "incomplete", as the original judgment creditor is not the assignor, and the "assignment"

fails to reference FCC, Mr. Musah, Mr. Musah's account or a judgment.  Even assuming Mr. Hauslanger

reviewed this "proof" at the time, his review nonetheless would have been insufficient under Miller I.

Defendant's reliance on Kapeluschnik v. Leschack & Grodensky, P.C., 1999 U.S. Dist. LEXIS 22883

(E.D.N.Y. Aug. 25, 1999), is unavailing.  Indeed, Kapeluschnik is instructive, as it is an example of what sort of

evidence, at the summary judgment stage, one Court found sufficient to grant judgment in favor of a debt

collector on a 1692e(3) claim.  In Kapeluschnik, the Court ruled on summary judgment in favor of a law firm

that had sent thousands of collection letters out under attorney signature over a one-year period, noting that the

extensive evidence presented by the collection attorneys who supported the conclusion that despite such volume,

7

the firm's attorneys conducted a meaningful review of each file.  In finding that the collection law firm had adequately reviewed each file prior to sending its collection communication, the Court noted that the firm had five attorneys responsible for review and supervision of collection efforts, and that attorneys "personally participated in and/or directly supervised the review" of every file, before a letter was sent, in order "to verify the data provided."  Id. at *4.  For example, reviewing the evidence, the Court, found no material dispute that:

> [E]ach and every step of the collection process is supervised by an attorney, including the receipt of information from creditor clients and its entering into the computer system, the verification of information regarding the debt, and the decision about what steps to take. Most significantly, the defendant attests that an attorney directs that each "pre-approved form letter" be sent after individual consideration of each matter.

Id. at *4-5 (citations to record omitted).

Defendant in the case at bar does not allege, much less submit any evidence of this sort of intensive review.[5]

Defendant, perhaps understanding that a defense based on the non-existence of meaningful review FDCPA claims under 1692e(3) will ultimately prove unavailing in light of the binding precedent on the issue, suggests that Mr. Musah's meaningful review claim is "solely premised on his belief that there was no valid assignment or notice to plaintiff".  This contention, too, is without merit.  It is irrelevant whether, years later, in an effort to defeat an FDCPA claim, Houslanger produces some or even all of the documentation referenced above.  Rather, as the Court explained in Miller III:

> For FDCPA purposes, an attorney claiming reasonable reliance [on the investigation or review of others] must also show that he or she was aware of those factors *at the time of his or her review and at the time that the collection letters were actually sent. An after-the-fact investigation into the reliability of another's work will not suffice.* Similarly, it is not sufficient to claim, after the fact, that the other party's procedures were adequate, or that they reached the correct result. Id. To paraphrase the court in Garr v. U.S. Healthcare [22 F. 3d at 1279], *a shot in the dark is no less sanctionable because it happens to hit the mark.*

> Id. at at 102 (*emphasis added*).

---

[5] In a hollow attempt to align his own case with Kapeluschnik, Defendant denies that he is a solo practitioner.  Houslanger Aff. at ¶2.  Defendant's statement that he "had other attorneys working with [him]" is, however, a study in vagueness, failing to provide any information about whether and how these attorneys (who are pointedly not labeled, employees, associates, or partners) were involved in conducting pre-collection file review, how many such attorneys there were, whether they are involved on a full-time basis, how many files were handled by each attorney within a given period of time, how many communications went out under each attorneys name, on average, in a given period of time, etc. This reference to having "worked with" other attorneys is thus wholly inadequate as a basis for the fact intensive assessment necessary in a 1692e(3) case, of which Kapeluschnik is a good example. The answers to these questions will require discovery.

Thus, the question is not whether the debt collector years later can compile information that, had it been reviewed at the time would have served as the basis for formation of a professional judgment regarding the merits of the claim, but rather whether such a review took place prior to the attorney sending the communication bearing his signature.[6]

It is likewise irrelevant whether digital signatures are *per se* unlawful under New York law. See Def. MOL at 9.  Pursuant to Miller I, the question is whether the volume and techniques used by a debt collector create a reasonable inference that documents are being generated in manner (e.g. "with the push of a button") such that a jury might find that no attorney had sufficiently reviewed the communication for FDCPA purposes.  Miller I at 305-306 ("if discovery in this case were to reveal that [the debt collector defendants] handled this high volume of accounts, received only the limited information described in the attorney affidavits, reviewed the collection files with such speed that no independent judgment could be found to have been exercised, and then issued form collection letters with the push of a button, a reasonable jury could conclude that W&A and UC&S lacked sufficient professional involvement with plaintiff's file that the letters could be said to be from an attorney.").

Indeed, with regard to facsimile signatures and 1692e, the Second Circuit has noted that "there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by § 1692e". Clomon v. Jackson, 988 F.2d 1314, 1321 (2d Cir. 1993).

### C.  Consideration Of Any "Evidence" That Notice Was Sent Or That The Debt Was Assigned Is Impermissible As All Such "Evidence" Is Outside The Four Corners Of The Complaint

The documents Defendant seeks to rely upon – principally a copy of a draft of a collection letter Defendant purportedly sent to Plaintiff in 2009, and a copy of an assignment that purports Palisades' ownership interest in the judgment -- are, as discussed below, grossly inadequate to settle the fact questions for which they are proffered by Defendant. But before addressing this issue, there is a more basic reason Defendant's arguments all fail: Defendant's arguments are all based on his reliance upon documents that may not be properly considered on a motion to dismiss.

---

[6] Plaintiff notes that Defendants' mischaracterization of his meaningful review claim is but one of numerous misstatements of this kind.  For example, Defendant states that "it is undisputed that a valid judgment exists" (e.g. Def. MOL at p. 8). This is false.  The judgment was challenged by Mr. Musah as deficient and invalid shortly after he became aware of it, and was vacated (and the case dismissed with prejudice) in 2011. Am. Complt. at 5; Def. MOL at 3. Defendant also states that "Plaintiff . . . admits . . . that 'the current judgment creditor/assignee is Palisades.'". This too is false. e.g. Am. Complt at ¶ 14 ("there is no valid assignment of the judgment from FCC National Bank to Palisades").

1.  The Limited Exceptions To The "Four Corners Of The Complaint" Rule

A motion under Rule 12(b)(6) presents a pure legal question, based on allegations contained within the four corners of the complaint. Goldberg v. Danaher, 599 F.3d 18, 183 (2d Cir. 2010). There are extremely limited exceptions to Rule 12(b)(6)'s general prohibition against considering materials outside the four corners of the complaint, which one District Court in the S.D.N.Y. recently and cogently outlined as follows:

> [I]f extrinsic evidence submitted on a motion to dismiss is deemed part of the pleadings, it may be considered in deciding the motion. See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, at *13 (S.D.N.Y. Jan. 26, 2010). Pleadings include not just the four corners of the complaint, but also "'any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)); Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (same); see also Fed. R. Civ. P. 10(c). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." Chambers, 282 F.3d at 153 (quoting Int'l Audiotext, 62 F.3d at 72). Therefore, extrinsic documents may be considered as part of the pleadings if they either are (1) attached  [**10] to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint. . . *To be incorporated by reference, the complaint must make "a clear, definite and substantial reference to the documents."* Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003); see also B.V. Optische Industrie De Oude Delft v. Hologic, Inc., 909 F. Supp. 162, 167 (S.D.N.Y. 1995). *"[L]imited quotation" of documents not attached to the complaint "does not constitute incorporation by reference."* Goldman v. Belden, 754 F.2d 1059, 1066 (2d Cir. 1985); see also In re Take-Two Interactive Sec. Litig., 551 F. Supp. 2d 247, 299 n.39 (S.D.N.Y. 2008). *To be integral to a complaint, the plaintiff must have (1) "actual notice of the extraneous information and (2) "'relied upon th[e] documents in framing the complaint.'"* Chambers, 282 F.3d at 153 (quoting Cortec, 949 F.2d at 48). "[M]ere notice or possession is not enough" for a court to treat an extraneous document as integral to a complaint; *the complaint must "'rel[y] heavily upon [the document's] terms and effect'" for that document to be integral.* Id. (quoting Int'l Audiotext, 62 F.3d at 72). Even if a document meets the twin requirements of integrality-reliance and notice-*a court still may not consider it on a motion to dismiss if there is a dispute "regarding the authenticity or accuracy of the document"* or "the relevance of the document" to the dispute. Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006).

Deluca v. AccessIT Group, Inc., 695 F. Supp. 2d 54, 59-60 (S.D.N.Y. 2010)(*emphasis added*); See

Ulit4less, Inc. v. Fedex Corp., 2012 U.S. Dist. LEXIS 138810 (S.D.N.Y. Sept. 25, 2012).

Judged by this standard, the documents submitted by Defendant are clearly extrinsic evidence that is not part of the pleadings.

2.  The Collection Letter

Plaintiff alleges that he was not notified of the assignment of judgment from the original judgment creditor to Palisades. Am. Complt at ¶¶17; 35; 38; 49. Defendant contends that this is not so, and attaches a

copy of an unsigned collection letter, claiming that it sent a signed version to Mr. Musah in 2009.  Exhibit A to

Hauslanger Aff.  Def. MOL at p. 6.

The collection letter was not attached to the Amended (or Initial) Complaint.  Nor was the letter

incorporated by reference, as it was not quoted from in whole or in part in the Complaint.  Goldman v. Belden,

754 F.2d 1059, 1066 (2d Cir. 1985); Sira v. Morton, 380 F.3d 57, 67-68 (2d Cir. N.Y. 2004).  Indeed, its

existence is counter-indicated in the complaint.  Am. Compl. at ¶¶ 17; 35; 38; 49.  Nor is the document "integral

to the complaint", *i.e.* its "terms and effect" are not "relie[d]  heavily upon."  Chambers, 282 F.3d at 153.  To the

contrary, Mr. Musah contends that he never received any such letter.

Even were this not so, the letter would not be properly considered because Mr. Musah alleges that he

did not have "actual notice" of any such letter, and because there is a dispute between the parties as to its

authenticity.  Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (see *infra*, Sections III(E) and (H)).

Indeed, the issues surrounding the document, *i.e.* its  authenticity, the true date of its creation, when, if

ever, it was sent by Defendant; when if ever it was received by Plaintiff, etc. are classic fact questions not

amenable to treatment on a motion to dismiss.[7]

3.  The "Assignment"

Plaintiff alleges that there is no written assignment of the judgment from the original judgment creditor,

FCC National  Bank, to Palisades.  Am. Complt. at ¶¶ 13-14, 23, 33, 34, 48.  Defendant claims that this is not

so, and in support of its contention, proffers an affidavit from Stephen Braun, who represents that he is an

assistant vice president at Palisades, and to which a document titled "Assignment" is attached.  Exhibit A,

attached to Braun Aff.

The "Assignment" is almost comical in its obvious deficiencies, discussed below, but the point here is

that it cannot properly be considered in support of Defendant's Motion to Dismiss, at all.  Like the letter, it is not

incorporated by referenced as it is not quoted from in whole or in part in the Complaint.  Goldman at 1066.

---

[7] The partly legible "screen shot" from someone's computer referencing a "Validation Letter" (Exhibit A to Hauslanger Aff) falls even wider of the mark.  In addition to its many other issues, this document is certainly not incorporated by reference in the Complaint, or integral to the complaint, nor is it a document that any party alleges Mr. Musah had actual notice of.  And again, its authenticity is disputed.  Mr. Hauslanger's affidavit states that "My firm's computer system creates an electronic time stamp, when a document is created, and this stamp cannot be altered".  Hauslanger Aff. at ¶ 6. The alleged "time stamp", not only is not attached, incorporated or referenced by the Amended Complaint, it is also not attached to any of Defendant's submissions.

Indeed – as with the collection letter – a valid chain of assignment's existence is counter-indicated in the complaint. Am. Complt. at ¶¶ 13-14, 23, 33, 34, 48. Nor is the document "integral to the complaint", *i.e.* its "terms and effect" are not "relie[d] heavily upon." Chambers, 282 F.3d at 153. To the contrary, as with the collection letter, the complaint alleges that there is no written assignment and, as such, its terms and effect are not relied upon at all.

And even were this not so, there is no claim that Mr. Musah was ever provided with a copy of the "Assignment" prior to Defendant's filing of its motion. As such, he did not have "actual notice" of this extrinsic document now being submitted. Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006). Moreover, particularly in light of the fact that the "assignment" does not reference the original creditor, Mr. Musah, his account, or any judgment (much less a judgment held by the original creditor against Mr. Musah), both its relevance and its authenticity is disputed. Id. See *infra* Section D.

### D. The Documents Submitted Do Not Show A Valid Assignment

Assuming this Court could examine the various extrinsic documents proffered by Defendant, all such proofs fail their purpose. The deficiencies of the "Assignment" are particularly egregious.

In his affidavit, Mr. Braun claims, without documentary proof, that FCC National Bank (the original holder of the judgment) was at some time renamed First USA Bank in 1999.[8] He states, also without any documentary proof that First USA Bank made an assignment of certain interests to Asta Funding Acquisitions II, LLC. He also claims without any documentary proof that ASTA funding acquisitions II LLC is a subsidiary of Asta Funding, Inc. Braun likewise claims without any documentation that Palisades is a subsidiary of ASTA Funding Inc. He does not claim to be a current or former employee of FCC National Bank, First USA Bank, or either of the Asta entities, nor does he set forth any reason why he should have knowledge of these matters.

*Critically, no assignment from FCC National Bank (or First USA Bank, for that matter) to Asta II has been produced.* Rather, Mr. Braun has produced only an assignment from one purported Asta subsidiary (Asta II) to another (Palisades). Without documentation of that initial alleged assignment, the alleged assignment from Asta to Palisades is utterly meaningless (except to flag the account to any debt collector reviewing the file

---

[8] There is no affidavit of any employee of either FCC National Bank or First USA Bank as to this purported name change, nor any public record evidencing it, and Stephen Braun offers no statement regarding the basis of his knowledge.

as one for which there is not adequate documentation).  Miller I at 305 (noting that 1692e(3) requires review

sufficient, *inter alia*, to determine "whether the information in the record was inconsistent or incomplete").

Shockingly, that is not the most serious defect in the paperwork provided by defendant. The Assignment

Braun has provided the Court reads as follows:

> FOR VALUE RECEIVED, Asta Funding Acquisitions II, LLC ("Assignor") does hereby assign,
> transfer and convey to Palisades Collection, LLC ("Assignee") its successors and assigns, all right, title
> and interest of Assignor in and to those accounts purchased by Assignor from First USA Bank pursuant
> to a bill of sale executed on March 16, 1999.
> This assignment is executed without recourse and without representation of warranty, collectability or
> otherwise, expressed or implied.

Not only does this document fail to address to address the relationship between FCC National Bank and

First USA Bank; *it fails to identify which accounts were purchased by Asta Funding Acquisition II, LLC from*

*First USA Bank, and makes no reference whatsoever to Mr. Musah's account or any judgment at all for that*

*matter.*

The case law is clear:  the single affidavit of an employee of the alleged final assignee will not suffice

where the original assignor has made an earlier assignment to an interim assignee and where there is no proof of

the earlier assignment(s).  See CACH LLC v Fatima, 32 Misc. 3d 1231A (N.Y. Dist. Ct. 2011)("Assigned debt

claimants must submit satisfactory proof, in proper evidentiary form, to establish their rights as an assignee and

the defendant's lawful indebtedness to it under the law of assignment. . . . It must further prove that the

defendant's particular account was included in the assignment."); Citibank (South Dakota), N.A. v. Martin, 11

Misc.3d 219 (Civ. Ct. N.Y.Co. 2005) (same) (collecting cases).

LVNV Funding LLC v Guest, 35 Misc. 3d 1232A (N.Y. City Ct. 2012) is illustrative:

> Plaintiff's counsel entirely failed to establish the relationship between the original creditor Monogram
> Credit Card Bank of Georgia and GE Money Bank.  Plaintiff's counsel was only able to posit . . . that
> they are related entities and produced a copy of a Certificate of Merger regarding the merger of GE
> Capital Consumer Card Co. and Monogram Credit Card Bank of Georgia. . . however, there has been no
> explanation or documentation offered regarding either the assignment of defendant's account by
> Monogram Credit Card Bank of Georgia to GE Capital Consumer Card Co. or the relationship between
> GE Capital Consumer Card Co. and GE Money Bank.  Accordingly, the sworn statement of Mr.
> Turnbull that GE Money Bank  owned the debt and subsequently sold it to Sherman Originator, LLC is
> entirely unsubstantiated hearsay and of no probative value.

Id. at *10.  See also, Malloy v. V.W. Credit Leasing, Ltd., 873 N.Y.S.2d 512 (Sup. Ct. Bronx Cty 2008);

Palisades Collection, LLC v. Gonzalez, 10 Misc. 3d 1058(a)(N.Y. Civil 2005).

In <u>Guest</u>, the Court ordered sanctions of $10,000 to be paid by the attorneys for the alleged assignee under New York's 22 NYCRR § 130.1.1, for, among other things, failure to obtain the entire chain of assignments prior to taking action against the alleged debtor. <u>See also</u> <u>Erin Services Co., LLC v. Bohnet</u>, 26 Misc.3d 1230A (Dist. Ct. Nassau Co. 2010)(awarding sanctions for, among other things, the plaintiff's failure to prove that there had ever been a lawful assignment). Defendant's own documentation, impermissibly submitted in support of its motion to dismiss, suggests precisely the same pattern of sanctionable conduct.

Even were it admissible, the lone affidavit of Stephen Braun and the documentation attached thereto is utterly inadequate, and in fact is a case study of what courts have held to be wholly inadequate to prove up an assignment.

Indeed, the fact that even at this late date, defendant does not allege the existence of and does not appear to have in his possession a written assignment from the original judgment creditor is a strong indication that Plaintiff will prevail at trial on his claims that no legally valid assignment exists, that Houslanger proceeded with collection action on a judgment without any legal basis, and without conducting a meaningful review of the file, including *inter alia*, reviewing the file for completeness. To wit, the barest minimum component of such a review in the context of collection on behalf of a purported judgment assignee would have been confirmation that the file contained a valid chain of assignments referencing the consumer's judgment, from the original judgment creditor to the entity on whose behalf Houslanger sought to take collection action.

### E. Actual Notice Of Assignment (*i.e.* Receipt) Is Required Under New York Law

The Amended Complaint alleges that Mr. Musah never received notice of the assignment before collection action began. See Am. Complt at ¶¶17; 35; 38; 49. Defendant argues that it is not Mr. Musah's receipt of the notice but the judgment assignee's having sent notice that is required. Def. MOL at p. 6.

The New York Court of Appeals has rejected Defendant's contention, holding: "A debtor, in order to be charged with a duty to pay a debt to an assignee, must first have *actual notice* of the assignment. . . . Respondent, having *received* no notice of the assignment prior to payment, cannot be charged with a duty to pay the debt to appellant's assignee." <u>Tri City Roofers, Inc. v. Northeastern Industrial Park</u>, 61 N.Y.2d 779, 780 (1984)(*emphasis added*); <u>See</u> <u>TPZ Corp. v. Dabbs</u>, 25 A.D.3d 787, 790 (2d Dep't 2006)("an account debtor is authorized to pay the assignor until the account debtor *receives* notification that the amount due or to become

14

due has been assigned and that payment is to be made to the assignee")(citations omitted, emphasis added);

Chase Bank USA, N.A. v Cardello, 27 Misc. 3d 791, 793 (Civ. Ct., N.Y. Co. 2010)("The rules of this court also

require the judgment debtor to receive notice of the assignment.")(*emphasis added*).[9]

If, as he alleges, Mr. Musah shows at trial that he received no notice of the assignment of the notice of

assignment, he will have stated a claim under the FDCPA because "having received no notice of the assignment

prior to payment, [a judgment debtor] cannot be charged with a duty to pay the debt to appellant's assignee." Tri

City Roofers, Inc., 61 N.Y.2d at 780.

### F. Notice Must Be Provided By The Judgment Assignor, Not The Judgment Assignee

Even if consideration of the Collection Letter was permissible at this stage of the proceeding, and even

if receipt of the letter was not required, the letter would not have any impact on Plaintiff's claims for another

reason: Notice must be provided by the judgment assignor (with whom the consumer has had some interaction)

not, as claimed here, by the judgment assignee. As one Court recently held:

> It is clear . . . that due process requires that notice of the assignment be given to the
> debtor by the assignor and not by the assignee. The credit card holder had his or her agreement
> with the credit card issuer and not with the unknown third-party debt purchaser so that receipt of
> notice from the third-party debt purchaser does not satisfy due process standards.
> Allowing the assignee to give notice would enable dishonest debt collectors to search the
> court records, obtain the names of judgment debtors and send the debtor a letter stating they have
> purchased the debt from credit card issuers such as Chase and the debtor should make all
> payments to the third party. Requiring the assignor-credit card issuer to serve the notice would
> reduce the incidents of fraud in this regard. The Federal Fair Debt Collection Practices Act lists
> 16 "false, deceptive or misleading" practices, some of which would not be available by requiring
> a notice of assignment to be given by the assignor to the debtor. The trend in consumer protection
> law is to require such notice (see Uniform Consumer Credit Code 1974 § 3.204, ULA Cons
> Credit § 3.204 [2009]), especially in dealing with consumer credit debt where the vast majority of
> defendants are unrepresented, unsophisticated individuals.

Chase Bank USA, N.A. v Cardello, 27 Misc. 3d 791, 794 (Richmond Civil Ct. 2010).

---

[9] Not surprisingly in light of the clear, binding precedent on this issue, Defendant relies upon two cases that are inapposite: Burr v. Eveready Insurance Company, a personal injury case not involving 5019(c), merely states that where a party has competently testified *at trial* regarding an office practice or procedure in the regular course of business of mailing a document, a presumption of receipt is created such that in order to prevail on the issue at trial, "the addressee must go beyond mere denial of receipt and actually demonstrate that the server's routine office practice was *not* followed, or was "so careless that it would be unreasonable to assume that the notice was mailed". The case has no application here for numerous reasons, not least of which is that it has nothing to do with notices of assignment, and no discovery has been conducted in the case at bar. 253 Ad 2d 650, 651 (1st Dept. 1998). Defendant's reliance on Mahon v. Credit Bureau, 171 F.3d 1197 (9th Cir. 1999) is equally misplaced. That case merely held 15 U.S.C.§ 1692g(a)'s, requirement that debt collectors "send" a certain written notice, was "fulfilled when the debt collector sent the notice. . . . [because] [n]owhere does the statute require receipt of the Notice".

<u>Cardello</u> was adopted in <u>South Shore Adj Co. v Pierre</u>, 32 Misc. 3d 1227A (N.Y. Civ. Ct. 2011):

> In <u>Cardello</u>, Judge Straniere . . . found that due process mandated that the assignor, and not the assignee notify the debtor of the assignment, since the credit card holder had his agreement with the credit card issuer, "and not with the unknown third party debt purchaser." Judge Straniere elaborated that to allow an assignee third party debt purchaser to give notice "would enable dishonest debt collectors to search the court records, obtain the names of judgment debtors and send the debtor a letter stating that they had purchased the debt "from a credit card issuer and that the debtor had to pay up or face court action. This practice would merely increase fraud and deceptive and misleading practices which were precisely why the federal Fair Debt Collections Practices Act ("FDCPA") was enacted. This court adopts Judge Straniere's ruling.

<u>Id.</u> at 1227A.[10]

Here Defendant contends only that the supposed judgment assignee, *i.e.* "an unknown third party debt purchaser" sent the notice. For this reason, too, any such notice would have been ineffective and Plaintiff's claims may move forward.

### G. The Collection Letter Does Not Notify Plaintiff Of An Assignment Of Judgment

Defendant's contentions regarding the collection letter also fail because the letter does not notify Mr. Musah of any assignment of judgment, nor even that a judgment was ever taken, stating merely that "[t]he current creditor to whom this debt is owed is Palisades Collections, LLC. The original creditor on this matter is FCC National Bank".

Defendant does not point to any case in which a Court has found such a vague reference sufficient to notify a judgment debtor that a judgment taken by one entity has been assigned by the judgment creditor to another entity. Indeed, the two cases cited by Defendant both underline the distance between the case at bar and the notices issued by assignors that courts have found sufficient.

In <u>GM Acceptance Corp. v. Albany Water Bd.</u>, 187 A.D.2d 894, 894-895 (3rd Dept 1992), which dealt with assignment of a contract (not a judgment), the assignor sent a copy of the actual assignment agreement to the debtor. The assignment explicitly stated that the contract was being assigned from the original creditor to a new creditor, to whom all payments should be made going forward, and required the debtor's signature, stating that "[i]n executing this agreement, the [debtor] "[a]cknowledged receipt of a copy of [the] assignment and

---

[10] See also cases, collected *infra*, Section III(G), in which Courts uphold notice of assignment emphasizing that the notice of assignment was either sent or executed by the original assignor.

agree[d] to make payments . . . as directed under [the assignment]". Id. The debtor signed, and then complained (to no avail) that the notice was not sufficiently clear.

In Capital Factors, Inc. v. Caldor, Inc., 182 A.D.2d 532 (1st Dept. 1992), the Court likewise held that where the assignor provided prominently in writing on every invoice that payment was to be made to an assignee, *and the debtor paid the assignee on three such invoices*, the debtor was on notice of the assignment.

Here, Defendant does not allege that the assignor provided any notification to Mr. Musah, nor that Mr. Musah ever volunteered payment to the assignee. Nor does the letter Defendant now submits reference a judgment, much less that a judgment has been assigned. Rather, the collection letter is a vague invitation to pay from an entity with which Mr. Musah undisputedly had no prior dealings. Moreover, even according to Defendant, Palisades did not take assignment from FCC, but rather, alleges that it took assignment from an intermediate entity, Asta, which is nowhere referenced in the "notice".

Defendant's contention that the collection letter put Mr. Musah on "inquiry notice", relying on N.Y. Practice, Contract Law § 15:11 also fails. While N.Y. Practice does state that receipt of a notice which "reasonably identifies the assigned rights and notifies the debtor to direct payment to the assignee" puts the debtor on "inquiry notice", a brief examination of the authority it relies upon, Hamilton Group (Del.), Inc. v. Fed. Home Loan Bank, 1 A.D.3d 973, 974 (N.Y. App. Div. 4th Dep't 2003), underscores the stark differences between scenarios in which Courts have found such inquiry notice and the the case at bar.[11]

In Hamilton, the debtor received a "Blanket Notice of Payment Redirection Letter" *jointly executed by the assignor and the assignee*, instructing the debtor to send all payments to the assignee, and stating that the assignee "has or may acquire" all rights in outstanding invoices. The Court held that despite the fact that the notice did not clearly state that the invoices had been "assigned", the notice was sufficient to put the debtor, a sophisticated commercial entity, on "inquiry notice" of the assignment.

Here, in contrast, Hauslanger's collection letter makes no reference to Palisades' right or interest in a judgment, much less to assignment of a judgment. And, in contrast to both Hamilton (and GM Acceptance), the letter was neither from nor executed by the assignor.

---

[11] Contract Law § 15:11 actually supports Defendants' contention regarding the requirement that receipt of the notice of assignment is required: "[T]he debtor is deemed to have notice of an assignment when it receives actual notice that the contract has been assigned."

17

## H.  The Documents Submitted Are Not In Admissible Form

Even if it were proper to consider the above referenced documents under Rule12(b)(6), and it is not, the

documents are inadmissible on the separate and independent ground that they do not satisfy the requirements of

the Federal Rules of Evidence.

### 1.  The Documents Have Not Been Authenticated

In order to be admissible, the "Assignment" must be authenticated.  Fed. R. Evid. 901(a).  As one court

cogently described, with regard to both paper and electronic records:

> Authenticating a paperless electronic record, in principle, poses the same issue as for a paper record, the only difference being the format in which the record is maintained: one must demonstrate that the record that has been retrieved from the file, be it paper or electronic, is the same as the record that was originally placed into the file. Fed. R. Evid. 901(a).
>
> *Hence, the focus is not on the circumstances of the creation of the record, but rather on the circumstances of the preservation of the record during the time it is in the file so as to assure that the document being proffered is the same as the document that originally was created.*
>
> *In the case of a paper record, the inquiry is into the procedures under which the file is maintained, including custody, access, and procedures for assuring that the records in the files are not tampered with.* The foundation is well understood and usually is easily established. The paperless electronic record involves a difference in the format of the record that presents more complicated variations on the authentication problem than for paper records. Ultimately, however, it all boils down to the same question of assurance that the record is what it purports to be.
>
> *The logical questions extend beyond the identification of the particular computer equipment and programs used. The entity's policies and procedures for the use of the equipment, database, and programs are important. How access to the pertinent database is controlled and, separately, how access to the specific program is controlled are important questions.* How changes in the database are logged or recorded, as well as the structure and implementation of backup systems and audit procedures for assuring the continuing integrity of the database, are pertinent to the question of whether records have been changed since their creation.
>
> There is little mystery to this. *All of these questions are recognizable as analogous to similar questions that may be asked regarding paper files: policy and procedure for access and for making corrections, as well as the risk of tampering. But the increasing complexity of ever-developing computer technology necessitates more precise focus.*
>
> Some of these questions are becoming more important as the technology advances. For example, digital technology makes it easier to alter text of documents that have been scanned into a database, thereby increasing the importance of audit procedures designed to assure the continuing integrity of the records.

American Exp. Travel Related Servs. v. Vinhnee (In re Vinhnee), 336 B.R. 437, 444-445 (B.A.P. 9th Cir.

2005)(*emphasis added*).

a.   The Assignment Is Not Authenticated

The Braun Affidavit is silent on whether the attached "Assignment" is a printout of an electronically stored image of the purported original (i.e. ESI) or merely a paper copy of the paper original. In either case, the affidavit is silent on all of the issues relevant to authentication. For example: the Braun affidavit contains no information regarding: the "circumstances of the preservation of the record during the time it is in the file"; the procedures under which the file is maintained, including custody and access; "procedures for assuring that the records in the files are not tampered with", etc. Of course, if the "Assignment" is an electronically stored document, the deficiencies are even more notable, as the affidavit is silent on "the particular computer equipment and programs used."; "policies and procedures for the use of the equipment, database, and programs"; "how access to the pertinent database is controlled", "how changes in the database are logged or recorded", "audit procedures for assuring the continuing integrity".  Id.; Rambus, Inc. v. Infineon Techs. AG, 348 F. Supp. 2d 698, 703 (E.D. Va. 2004)(documents inadmissible where affiant does not "purport to be familiar with the record-keeping system of the company" and with how documents were maintained.)

In short, we know nothing about how this document was or was not maintained, preserved or tampered with. Nor does Mr. Braun even claim to have knowledge of these topics.

b.   *The Collection Letter and Screen Shot Are Not Authenticated*

The unsigned collection letter attached to the Hauslanger Affidavit suffers from all the same deficiencies. According to the Hauslanger Affidavit, the attached letter is not a true copy of the original, as his office does "not maintain copies of this particular signed correspondence in [its] files". Hauslanger Aff. at ¶6. Although the affidavit is exceedingly vague on this point, one gathers from Mr. Hauslanger's reference to a "time stamp" that the document may be alleged to be some sort of digitally stored copy of the unsigned final draft of the letter. Id.[12]

Again, virtually every relevant fact needed for authentication is absent: Defendant offers no information as to how the document was stored, including the hardware and software used; about Hauslanger's

---

[12] Mr. Hauslanger alleges in his Affidavit that his firm's "computer system creates an electronic time stamp when a document is created, and this time stamp cannot be altered". He does not, however, attach an image of the "time stamp" or even excerpt what time the stamp indicates as the date of creation of the unsigned copy. Nor does he even mention what program is used to create the "stamp".

procedures for use of the equipment, how the database is controlled, procedures for assuring that documents are not altered, after the fact, etc. In short, nothing "assure[s] that the document being proffered is the same as the document that originally was created."

These same deficiencies are present with regard to the partially legible "screen shot" which appears to show that, at some point, a notation of "5/1/2009" was made by someone in the "date sent" column regarding a "validation letter", in a computer file with Plaintiff's name across the header. Mr. Houslanger's Affidavit does not reference the screen shot, let alone offer a clue as to how the information that appears in the screen shot was entered, by whom, or how the data was maintained and preserved from that time until now. In other words, there is a complete "lack of basic information that would provide assurance that the record reproduced from the electronic media is identical to the record that was originally stored." In re Vinhnee, 336 B.R. at 449.[13]

### I.     The Complaint Sets Forth Violations of Judiciary Law § 487

Defendant contends that Mr. Musah's Judiciary Law claim fails because it contains "nothing more than conclusory allegations". In doing so, Defendant sets forth Plaintiff's allegations as follows:

> Plaintiff alleges that [Hauslanger] "was guilty of deceit in enforcement of the judgment obtained in the State Action, including his invocation of the Court's authority as the basis for his seizure of [plaintiff's] funds", and that Haulsanger "perpetuated this deceit with the intent to deceive [plaintiff,] and that [Hauslanger's] "false representations" are part of a "recurring policy and practice" that "is designed and has the effect of increasing [Hauslanger's] profits.

Def. MOL at 10.

In reality, the Amended Complaint is far more detailed, alleging that:

- Defendant violated Judiciary Law §487 by "knowingly and falsely invoked the authority of the state court system to collect a judgment obtained by FCC National Bank when he knew or should have known that its client Palisades Collections LLC had never taken the steps necessary to obtain authority to collect on that judgment." Amended Complaint at ¶ 63.
- "Prior to employing the power of the State Courts in restraining Mr. Musah's bank account, Houslanger had a duty to meaningfully review the facts and make a reasonable inquiry into the existence of the assignment in favor of his client, the filing of the assignment, and whether Mr. Musah had been provided with notice of the change in creditors []" and that "[h]e did not make any such inquiry". Id. at ¶ 64.
- Hauslanger claims to "specialize in judgment executions". Id. at ¶ 9;
- "Upon information and belief, Houslanger's use of an information subpoena and restraining notice to enforce a judgment on behalf of an alleged assignee (a) without Houslanger's knowing that an

---

[13] The same deficiencies described above with regard to authentication also render the documents inadmissible as hearsay not subject to as business records. Fed. R. Evid. 803(6).   Plaintiff notes in this regard that neither Mr. Braun nor Mr. Hauslanger claims to be a custodian of records, nor do either of them provide information regarding how and in what form the documents were stored.

*assignment of judgment* existed, (b) without any notification having been given to the judgment debtor and (c) without filing an assignment of judgment or taking steps to ensure that an assignment has been filed, far from an anomaly, is part of the business plan developed by Houslanger, who has found that compliance with the CPLR and meaningful pre-enforcement review of consumer files is not as profitable as serving information subpoenas and restraining notices without review, because the overwhelming majority of consumer collection judgments are enforced against *pro se* judgment debtors who are, as a practical matter, incapable of meaningfully challenging even the most inaccurate, false, and deficient, enforcement instruments." Id. at ¶ 41.

- "Defendant Houslanger, a solo practitioner, files an extraordinarily high volume of collection actions. A review of eCourts reveals that Defendant has appeared in more than 34,000 actions since 2005." Id. at .42.

- "Because, it is not Defendant Houslanger's practice to file an assignment when representing entities that allege to have taken an assignment of judgment, it is impossible without discovery to know exactly how many more cases Defendant handles where he becomes counsel, post-judgment, to a judgment assignee. However, given the overall volume of his practice, Defendant's statement on his website that "we specialize in judgment executions", and the extraordinarily high volume of cases handled by Defendant Houslanger's clients, including Palisades (which, according to a report by the Urban Justice Center filed 234 cases out of a sample of 600 New York City Civil Court consumer collection cases filed in 2006, i.e. 39%) the number is virtually certain to be in the thousands." Id. at 43.

- "Indeed, on information and belief, the "signatures" appearing on the Information Subpoena and on the Restraining Notice are digitally or otherwise non-manually created to facilitate issuance of a high volume of such documents without attorney involvement." Id. at 53.

- "This was not an isolated instance but was rather, on information and belief, part of a much larger pattern pursuant to which Defendant's high volume solo practice, with its focus squarely on "judgment execution", sends out thousands of post-judgment collection documents annually (to consumers, to banks holding consumer's funds, and others) which bear Mr. Houslanger's name and signature, but which are regularly mass produced by non-lawyers in Mr. Houslanger's firm and sent on behalf of debt collectors without meaningful attorney review of the consumer's account or any of the underlying documentation." Id. at 54.

- "Instead, on information and belief, like the thousands of other post-judgment collection documents being churned out of Defendants' office, the Information Subpoena and Restraining Notice at issue here was issued on behalf of Houslanger's client (in this case, Palisades) with the push of a button, and without an attorney undertaking a meaningful, independent evaluation and analysis of either the debtor's file or the documents themselves." Id. at 57.

Plaintiff's allegations, thus, clearly provide enough factual support to, at a minimum, "nudge[] [his] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974.

Defendant attempts to support his argument by citing to numerous cases finding that an isolated, instance of misconduct, without a plausible allegations of scienter, is insufficient to make out a claim under Judiciary Law § 487. See, e.g., Briarpatch Ltd., L.P. v. Frankfurt, Garbus, Klein & Selz, P.C., 13 A.D.3d 296, 297 (N.Y. App. Div. 1st Dep't 2004); DeStaso v Condon Resnick, LLP, 90 A.D.3d 809, 814 (N.Y. App. Div. 2d Dep't 2011).

In contrast, Plaintiff has alleged precisely the sort of repeated, intentional, unlawful collection action that the Courts have found actionable the under New York Judiciary Law in the consumer collection context.

21

See, e.g., Diaz v. Portfolio Recovery Assocs., LLC, 2012 U.S. Dist. LEXIS 25802 (E.D.N.Y. Feb. 28, 2012)

("[U]nlike the allegations in the cases cited by defendant, which relate to isolated instances of misconduct,

plaintiff's claim is based on an alleged broad pattern of deceptive filings that plaintiff claims were

"'robosigned'" without meaningful review and which were time-barred on their face"), adopted, objections

overruled by Diaz v. Portfolio Recovery Assocs., LLC, 2012 U.S. Dist. LEXIS 72724 (E.D.N.Y. May 23, 2012)

(holding that Magistrate "rightfully found that Plaintiffs' allegations of a 'broad pattern of deceptive filings'

were  sufficient to support a claim under Section 487"); see also, Sykes v. Mel Harris & Assocs., LLC, 757 F.

Supp. 2d 413(S.D.N.Y. 2010).

Finally, Defendant argues that the fact that Hauslanger is listed as counsel of record for at least 34,000

collection actions filed in New York state court in the past 5 years provides no support to Plaintiff's contentions

because Plaintiff cannot detail precisely how many of these cases "were related to the collection of judgments

based on assignments".

However, this extraordinary volume of litigation, combined with the other factual allegations set forth

above, clearly creates a plausible inference that Hauslanger – who even now does not claim to have any attorney

employees (see fn. 5, *supra*) – is operating at a volume that makes meaningful review prior to mechanical

affixation of his signature to collection communications implausible.

In Diaz, for example, the Court discussed a debt collection attorney's volume practice as follows:

> If correct, plaintiff's figures suggest that Mr. Wolstein reviewed and filed 12 complaints a day,
> assuming he worked 356 days a year.  If so, it is difficult to understand how he then was able to
> undertake the work necessary to pursue these claims in court, file motions, and collect on the
> numerous default judgments that were awarded.

Diaz, 2012 U.S. Dist. Lexis 25802 at *39, n.8.  See, also, Miller I at 305-6; Miller III at 96, 100.

The same reasonable inferences are appropriate here.  Papelino v. Albany College of Pharm. of Union

Univ., 633 F.3d 81, 85 (2d Cir. N.Y. 2011)(Court is to rely not only on the allegations in the complaint but "all

reasonable inferences" that can be drawn from the Complaint); Famous Horse Inc. v. 5th Ave. Photo Inc., 624

F.3d 106 (2d Cir. N.Y. 2010).[14]

---

[14] In any event, Courts have been particularly reluctant to dismiss § 487 claims based on misconduct, even absent such a pattern, in light of the New York Court of Appeals discussion in Amalfitano v. Rosenberg, 12 N.Y.3d 8 (N.Y. 2009), which disavowed additional, judge-created requirements to § 487 claims, not found in the language of the statute.

**J.  Houslanger Is Not Entitled To Fees Under 15 U.S.C. §1692k(a)(3)**

Defendant's claim for fees is frivolous.  The standard for an award of fees to the defendant in an FDCPA matter is governed by statute, which provides that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 USCS § 1692k(a)(3); Emanuel v. American Credit Exchange, 870 F.2d 805, 809 (2d Cir. N.Y. 1989).  The statutory standard sets a high bar which Houslanger does not approach.

Defense counsel sets forth three bases to support their unwarranted quest for fees: (1) Defendant's untrue allegation that plaintiff's original pleading was based on the existence of an assignment and that the Amended Complaint now alleges that no assignment existed (Def. MOL at 12); (2) the allegation that plaintiff's Amended Complaint stated that Mr. Musah had no notice of the assignment of the judgment, even though the defense had provided plaintiff's counsel with a copy of a vague, unsigned letter which had purportedly been sent to Mr. Musah (Id. at 13) and (3) the allegation that plaintiff's counsel has mentioned this lawsuit on the firm's website (Id.).  A closer examination of each of these statements will show that the Plaintiff has not brought this action in bad faith or for the purpose of harassment.

1.  The Defendant's Allegations Regarding The Existence Of The Assignment

The initial complaint alleged that any assignment of the judgment against Mr. Musah was never filed. Initial Compl. at ¶ 18.  The initial complaint was completely silent on whether a valid assignment of the judgment (whether or not filed) existed.

Defendant contention that the initial complaint stated affirmatively or even implied that such an assign existed is simply erroneous.  Notably, Defendant does not (and cannot) cite to any such statement in the initial complaint.  There is none.

---

Scarborough v. Napoli, Kaiser & Bern, LLP, 63 A.D.3d 1531, 1532 (N.Y. App. Div. 4th Dep't 2009); Dupree v Voorhees, 24 Misc. 3d 396 (Sup Ct, Suffolk County 2009)(reversing itself on reargument, and stating that "the revival of this cause of action under the Amalfitano decision emphasizes the need for all attorneys to be completely forthright in their dealings with the court, and with one another").

Indeed, as discussed above, the only assignment which defendant has ever produced, even now, is the one attached to the Braun affidavit, which shows an assignment from the previously unmentioned Asta Funding Acquisitions II, LLC to Palisades and which contains no reference to Mr. Musah, his judgment or his account.

In light of Defendants' repeated inability over the last 18 months of litigation (of the state and now the federal action) to provide a valid chain of assignment it appears virtually certain that no such chain exists (much less was reviewed by Hauslanger prior to his taking collection action against Mr. Musah). Defendant's request for sanctions on this basis is absurd.

2.      The Defendant's Allegations Regarding Notice Of The Assignment

Given the lack of valid chain of assignment from the original judgment creditor to Palisades, Defendant's contentions regarding notice are moot. In any event, Mr. Musah did not receive any notice of the assignment, as required under Tri City. And even if sending the notice (without it being received) were enough, the mailing would need to be made by the judgment assignor, not the judgment assignee, and the letter would need to actually notify Musah that there was a judgment and that it had been assigned, none of which is the case. In addition, as discussed above, the collection letter remains unauthenticated. Defendant's request for sanctions on this basis, too, is frivolous.[15]

3.      The Website Allegation:

Defendant complains that a description of this action appears on counsel for Plaintiff's website. Defendant does not, however, reference or even allege a single inaccurate statement on the website. Rather, Defendant complains that the undersigned "appears to be using the mere filing of the action to market his own law firm presumably for financial gain". Def. MOL at p. 13. Law firms post descriptions of non-sealed, recently filed actions on their websites routinely. A website which sets forth the cases that the law firm is currently handling provides members of the public with information useful to them in seeking to retain counsel. This is entirely permissible and cannot even remotely be considered the basis for a sanction.

---

[15] Opposing counsel notes that he sent a copy of the unsigned collection letter (but not the "screen shot") to the undersigned prior to bringing his motion. Def. MOL at 13. I responded by letter dated 1/8/13 noting a few of the many deficiencies pointed out in this memorandum, and stating that various factual issues surrounding the unsigned copy were appropriately addressed in discovery.

Moreover, even if there were merit to any of Defendants' supposed substantive bases for sanctions – and there is none whatsoever -- counsel's intent cannot be imputed to plaintiff. Kahen-Kashani v. Nat'l Action Fin. Servs., 2004 U.S. Dist. LEXIS 28420 (W.D.N.Y. Apr. 12, 2004).

IV.   **CONCLUSION**

For the reasons set forth above, Defendant's motion should be denied in its entirety.

Dated:   New York, New York
         February 21, 2013

Respectfully submitted,

Daniel A. Schlanger, Esq.
Schlanger & Schlanger, LLP
9 East 40th St., Suite 1300
New York, New York  10570
Tel:  (914) 946-1981
Fax:  (914) 946-2930
*Attorneys for Plaintiff*

25